1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE DORSEY CANTRELL, | CASE NO. 07-CV-0354 W(POR) |
| Petitioner, | **ORDER:** |
| vs. | **1) ADOPTS-IN-PART AND MODIFIES-IN-PART THE REPORT AND RECOMMENDATION (Doc. No. 12.)** |
| L.E. SCRIBNER, Warden, | **2) DENIES PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1.)** |
| Respondent. | |

On February 22, 2007, Petitioner Willie Cantrell ("Petitioner"), a state prisoner proceeding *pro se*, filed this habeas petition seeking relief under 28 U.S.C. § 2254. On July 7, 2008, Magistrate Judge Louisa Porter filed a Report and Recommendation ("Report"), recommending that the Court grant the pending motion to dismiss. On October 21, 2008, Petitioner filed his objections. The Court decides the matter on the papers submitted and without oral argument. See Civil Local Rule 7.1(d.1). For the reasons outlined below, the Court **ADOPTS-IN-PART** and **MODIFIES-IN-PART** the Report and **DENIES** the petition.

# I.      BACKGROUND

On April 28, 2004, following a jury trial, Petitioner was found guilty in San Diego Superior Court of four counts of committing a lewd act upon a child in violation of California Penal Code section 288(a). (*Lodgment 1* at 214-217).

The jury had not heard the proposed expert testimony of Dr. Thomas Lee regarding how a child's testimony can be influenced by adults. The jury had, however, heard evidence that Petitioner had sexually abused another child with whom he had previously lived. (*Lodgment 7* at 260-269).

At sentencing, Petitioner admitted to five prior serious felony convictions. The trial court struck four of the Petitioner's prior convictions. (*Lodgment 7 vol. 2* at 401). Accordingly, only one prior conviction remained for consideration in Petitioner's sentencing pursuant to California's recidivist sentencing statute. To justify striking the priors, the trial court cited the "washout period" during which Petitioner remained a law abiding citizen. Id. Moreover, the trial court emphasized that the priors were too attenuated in time for consideration because they all occurred more than twenty years before Petitioner perpetrated the present offense. Id. In sum, the trial court reasoned that treatment under the Three Strikes law would be disproportionate to the nature of the case and that he had "adequate sentencing parameters within which to punish" a one-strike defendant. Id. At the time of sentencing, Petitioner was 52 years old. Id.

Petitioner was then sentenced to 43 years in prison. (*Lodgment 7 Vol. 2* at 371–411). The sentence included the upper-term sentence of eight years for count one, justified by the finding of two aggravating factors, and one-third the middle term sentence of six years on counts two, three, and four, all which doubled as a result of the one remaining strike. Id. Additionally, the trial court had found that counts two, three and four were separate incidents between which Petitioner had time to reflect upon his actions, and as such, imposed consecutive sentences. (*Lodgment 7 vol. 2* at 408). The trial court then, under California law, imposed an additional fifteen years to account for the serious felony priors. Id.

The two aggravating factors used to justify the imposition of the upper-term sentence for count one were both factually based. Specifically, the trial court first found that Petitioner "violated the trust and love of a minor child" and that his acts were "egregious" and "calculated." (*Lodgment 7 vol. 2* at 407). And second, the trial court stated that while Petitioner "has not been previously convicted of any other sexual offenses, there was evidence before the Court of prior contacts with another family member at the same age." (*Lodgment 7 vol. 2* at 407). No other factors were cited to aggravate Petitioner's sentence.

On February 22, 2007, Petitioner  filed a habeas corpus petition seeking relief under 28 U.S.C. § 2254. On July 7, 2008, Magistrate Judge Porter issued a Report and Recommendation ("Report") recommending that Petitioner's habeas petition be dismissed. (Doc. No. 12). The Report also ordered that any objections were to be filed by August 8, 2008, and that replies to the objections were due ten days after being served. On August 11, 2008, Petitioner requested a time extension to file objections. (Doc. No. 13). On August 14, 2008, the Court granted Petitioner's motion, and gave the parties until October 6, 2008. (Doc. No. 14). On October 21, 2008, Petitioner filed objections. (Doc. No. 16). Despite their lack of timeliness, the Court accepted and considered Petitioner's objections in making its determination. To date, no reply to the objections has been filed.

## II.   LEGAL STANDARD

The duties of a district court in connection with a magistrate judge's report and recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court "must make a *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); see also United States v. Raddatz, 447 U.S. 667, 676 (1980); United States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989).

-3-

When a reasoned state court decision addresses a petitioner's Constitutional claims, Federal courts conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court Law.  See Delgado v. Lewis, 223 F. 3d 976, 982 (9th Cir. 2000).  A state court decision is contrary to clearly established Supreme Court law if it (1) applies a rule that contradicts the governing law set forth in Supreme Court cases; or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at the opposite result.  Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court decision is an unreasonable  application of the law to the facts "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

**III.   DISCUSSION**

Petitioner seeks relief on grounds that: (1) Petitioner's federal right to due process was violated when the trial court did not allow him to present expert opinion testimony of the unreliability of children's testimony; (2) Petitioner was convicted in violation of his federal right to due process when propensity evidence was presented to the jury; and (3) Petitioner's Sixth Amendment right to a jury trial was violated at sentencing when the trial court relied upon facts not found by a jury. (See Doc. No. 1).

Having read and considered the underlying Petition, and the Report and Petitioner's objections thereto, the Court **ADOPTS-IN-PART** and **MODIFIES-IN-PART** the Report, and for the reasons below, **DENIES** Petitioner's writ of habeas corpus.

**A.    The Trial Court's Exclusion of Petitioner's Proposed Expert**

In Ground One of the habeas petition, Petitioner claims that the trial court abused its discretion when it refused to let Petitioner present the expert testimony of Dr.

1   Thomas Lee regarding how a child's testimony can be influenced by adults.  Petitioner
2   alleges that this refusal was a violation of his federal right to due process. (Doc. No. 1 at
3   6.)  The Report rejected this argument. (Report at 5.)  Petitioner objects to the Report's
4   finding. (Doc. No. 16 at 3.)

5       Upon federal habeas review, the Ninth Circuit employs "a balancing test for
6   determining whether the exclusion of the testimony violates due process." Arredondo v.
7   Ortiz, 365 F.3d 778, 785 (9th Cir. 2004).  "In weighing the importance of evidence
8   offered by a defendant against the state's interest in exclusion, the court should consider
9   the probative value of the evidence on the central issue; its reliability; whether it is
10  capable of evaluation by the trier of fact; whether it is the sole evidence on the issue or
11  merely cumulative; and whether it constitutes a major part of the attempted defense."
12  Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985).  Moreover, the court "must give
13  due weight to the substantial state interest in preserving orderly trials, in judicial
14  efficiency, and in excluding unreliable or prejudicial evidence." Id. at 995.

15      In weighing the importance of the evidence, under the Ninth Circuit standard, it
16  is helpful to the Court that Petitioner presented the same claim to the Fourth District
17  Court of Appeal.  In that proceeding, the Court of Appeal concluded that the proffered
18  testimony lacked proper foundation and was therefore "speculative and irrelevant to the
19  evidence at trial." (Lodgment 2 at 6–8.)  This conclusion, which is discussed more
20  completely in the Report, was the result of considering the evidence's probative value,
21  reliability, and whether the evidence could be appropriately evaluated by the trier of fact.
22  (Id.)  The Court finds that analysis persuasive, especially considering the due weight that
23  is to be afforded to the state interest in excluding unreliable or prejudicial evidence.
24  Miller, 757 F.2d at 995.

25      Accordingly, Petitioner has failed to establish that the Fourth District Court of
26  Appeal's affirmance of the exclusion of evidence was contrary to, or an unreasonable
27  application of, federal law.  As such, the Court **ADOPTS** the analysis of the Report in
28  regards to this issue and **DENIES** Petitioner's first ground for relief.

**B.     The Trial Court's Admission of Propensity Evidence**

Ground Two of Petitioner's habeas petition alleges a violation of Petitioner's federal due process rights when the trial court allowed the introduction of propensity evidence.   Specifically, the jury heard testimony from a woman who had accused Petitioner of a similar molestation during her childhood. (*Lodgment 7* at 260–68).  The Report rejected this argument, finding that the trial court did not abuse its discretion when, based on California Supreme Court precedent, it admitted the propensity evidence subject to a limiting instruction.  (*Report* at 7–9).  Petitioner  objects to the Report's finding, and requests an evidentiary hearing. (Doc. No. 16 at 12–16).

In Estelle v. McGuire, the Supreme Court "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior' crimes evidence to show propensity to commit a charged crime." 502 U.S. 62, 75 n. 5 (1991). However, California Evidence Code section 1108, pursuant to which the propensity evidence was admitted, makes evidence of a defendant's past sexual offenses admissible in cases where sexual assault is charged.  And Federal Rule of Evidence 413, on which section 1108 was modeled, has been held constitutional by the Ninth Circuit.  See United States v. Lemay, 260 F.3d 1018 (2001).

Accordingly, Petitioner has failed to demonstrate that the Fourth District Court of Appeal's affirmance of the trial court's admission of the propensity evidence  was contrary to, or an unreasonable application of, federal law.  And as such, the Court **ADOPTS** the analysis of the Report in regards to this issue and **DENIES** Petitioner's second ground for relief.

**C.     The Trial Court's Imposition of the Upper Term on Count One**

Ground Three of Petitioner's habeas petition alleges that his sentence was issued in violation of his Sixth Amendment right to a jury trial.  Petitioner's argument is based on the fact that the aggravating factors relied upon to give Petitioner an upper term sentence on count one were not submitted to the jury for determination. (Doc. No. 1 at

8.) The Report finds a violation under <u>Cunningham</u>, but deems the error harmless. (Doc. No. 12 at 9–15.)  Petitioner objects claiming that the violation was prejudicial. (Doc. No. 16 at 18.)  For the reasons outlined below, the Court **ADOPTS** the Report's conclusion that the Petitioner's sentence was issued in violation of his Sixth Amendment right to a jury trial, **MODIFIES** the Report's harmless determination, and **DENIES** Petitioner's third ground for relief.

### 1.     The Imposition of the Upper Term Violated the Sixth Amendment

On July 19, 2004, Petitioner was sentenced to 43 years in prison. (*Lodgment 7 vol. 2* at 390-411.)  In his appeal to the California's Fourth District, Petitioner claimed that the imposition of the upper term and consecutive sentences violated the United States Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).   On September 9, 2005, the Fourth District Court of Appeal rejected Petitioner's argument by citing <u>People v. Black</u>, which was good law at the time. 35 Cal.4th 1238 (2005).  On November 30, 2005, the California Supreme Court denied the petition for review. (*Lodgment* 6)  But on January 22, 2007, the legal landscape of California criminal law changed significantly. <u>See</u> <u>Cunningham v. California</u>,549 U.S. 270 (2007).[1]

In <u>Cunningham</u>, the Supreme Court found that California's determinate sentencing laws violated a defendant's Sixth Amendment right to a trial by jury because they authorized the judge, not the jury, to find facts permitting an upper term sentence. 549 U.S. 270 (2007).  Respondent contends that <u>Cunningham</u> does not apply to the instant case because retroactive application of that new rule would violate the doctrine established in <u>Teague v. Lane</u>, 489 U.S. 288 (1989).  Summarized broadly, <u>Teague</u> holds

---

[1]    As explained by the Respondent: In response to <u>Cunningham</u>, the Legislature passed a bill amending California Penal Code section 1170(b), which the Governor signed as urgency legislation on March 30, 2007. See Cal. Stats., ch. 3, § 2, eff. Mar. 30, 2007.  In response to this legislation, the California Judicial Council amended the California Rules of Court on May 23, 2007.  See Cal. Ct. R. 4.405-4.452, as amended May 23, 2007. (Doc. No. 7 at 16 n. 4.)

1   that a petitioner may not benefit from a rule that was adopted after the petitioner's

2   conviction became final. 489 U.S. at 288.

3          However, on June 9, 2008, almost a year after the filing of Respondent's Answer,

4   the Ninth Circuit held—after addressing <u>Teague</u> directly—that <u>Cunningham</u> "did not

5   announce a new rule of constitutional law" and was to be applied retroactively. <u>Butler</u>

6   <u>v. Curry</u>, 528 F.3d 624, 639 (9th Cir. 2008).  The Report notably discusses <u>Butler</u> and

7   <u>Cunningham</u>'s retroactivity in the Ninth Circuit. (*Report* at 12:17-24.)   To date,

8   Respondent has not filed anything with the Court to address <u>Butler</u>'s impact on the

9   instant case.

10         In sum, if the trial judge used his own factual determinations to impose an upper

11  term, other than the fact of a prior conviction, the Petitioner's Sixth Amendment rights

12  have been violated. <u>Butler</u>, 528 F.3d at 639, 645.

13         The trial judge aggravated Petitioner's sentence for two reasons.  The transcript

14  reads:

15          First of all, the base count will be count one.  The Court specifically

16          elects to use the upper, aggravated term for the following reasons:
            (1) The Defendant violated the trust and the love of a minor child.  It

17          was egregious.  It was calculated.

18          (2) While he's not been previously convicted of any sexual offenses, there

19          was evidence before the court of prior contacts with another family

            member at the same age.  While given the opportunity while in prison as
20          a result of a revocation for that conduct to reflect upon the conduct, the

21          Defendant rather repeats it.

22          Within the context of this family he is an extreme danger.

23
    (*Lodgment 7 vol. 2* at 407.)
24
           The factual nature of both cited reasons seems plain.  In the first instance, the trial
25
    court made its own determination that the acts had been egregious and calculated.  And
26
    second, the trial court made a conclusive finding that Petitioner had previously molested
27
    another child.  While the jury had heard evidence regarding this previous molestation,
28
    they had not been asked to make such findings. Thus, as concluded in the Report, this

1   Court finds that both factors were factually based and neither had been submitted to the
2   jury, in violation of <u>Cunningham</u>. (Doc. No. 12 at 13.)[2]

3           Additionally, Petitioner's writ includes a Sixth Amendment challenge regarding
4   the imposition of consecutive sentences. (Doc. No. 1.)  As explained in the Report, the
5   California Supreme Court has held that the United States Supreme Court's decision in
6   <u>Cunningham</u> "does not call into question the conclusion we reached regarding
7   consecutive sentences," which is that "imposition of [consecutive sentences] does not
8   implicate a defendant's Sixth Amendment rights." <u>People v. Black</u>, 41 Cal.4th 799,
9   821–23 (2007). More importantly, the United States Supreme Court recently confirmed
10  that the imposition of consecutive sentences in state courts does not implicate the Sixth
11  Amendment right to a jury trial. <u>Oregon v. Ice</u>, 555 U.S. __, No. 07-901 (Jan. 14, 2009).

12          In sum, the Court **ADOPTS** the analysis of the Report in its conclusion that
13  Petitioner's Sixth Amendment rights were not violated when he received consecutive
14  terms, but they *were* violated when he received the upper term on count one based on
15  the two reasons cited by the trial court.  Relief is warranted in Petitioner's case unless the
16  error was harmless.

17

18          **2.      The Sixth Amendment Violation Was Harmless Error**

19          As mentioned above, the Report concluded that Petitioner's sentence was imposed
20  in violation of his federal Sixth Amendment rights. (Doc. No. 12 at 14).  But the Report
21  found that this sentencing error was harmless. <u>Id</u>.  Petitioner objects to that conclusion
22  and contends that the violation was prejudicial. (Doc. No. 16 at 18).  The Court
23  **MODIFIES** the Report but agrees with its harmless determination.

24          Petitioner is only entitled to habeas relief "if the sentencing error in his case is not
25  harmless." <u>Butler</u>, 528 F.3d at 648 (citing <u>Washington v. Recueno</u>, 548 U.S. 212 (2006)).

26  _____

27          [2]It should be acknowledged that what the trial court did in Petitioner's sentencing
28  was appropriate under the law at the time.  It is also worth noting that, based on the
    evidence presented, the trial court's conclusions seem well founded and not
    unreasonable.  This latter belief is further addressed in the harmless error analysis.

1    An error is harmless if it does not have a "substantial and injurious effect on
2    [Petitioner's] sentence." Id.(citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993);
3    Hoffman v. Arave, 236 F.3d 523, 540 (9th Cir. 2001)).  Under that standard, this Court
4    must grant relief if we are in "grave doubt" as to whether a jury would have found the
5    relevant aggravating factors beyond a reasonable doubt. Butler,528 F.3d at 648(citing
6    Oneal v. McAninch, 513 U.S. 432, 436 (1995)).  And "grave doubt" is defined as a
7    situation when, "in the judge's mind, the matter is so evenly balanced that he feels
8    himself in virtual equipoise as to the harmlessness of the error." Id at 435.

9        In Butler, for example, the Ninth Circuit found that the Petitioner's Sixth
10   Amendment rights had been violated by a California trial court when the "maximum
11   possible term was raised based on facts, other than a prior conviction, that were not
12   admitted or proved to a jury beyond a reasonable doubt." 528 F.3d at 648.  After making
13   that determination, the Ninth Circuit individually examined the two aggravating factors
14   that had formed the basis for the aggravated sentence under the 'grave doubt' standard.
15   Id at 648–652.

16       The first aggravating factor had been that the victim "was particularly vulnerable
17   because 'she was attacked from behind.'" Id at 649.  The Court examined the record and
18   noted that the Petitioner had never contested the evidence showing that the wounds
19   were on the back of the victim's head.  Further, the Court stated that the jury's ultimate
20   verdict demonstrated their belief in that version of the incident.  Id at 649.  In the end,
21   the Ninth Circuit had "little doubt" that a jury would have found that the victim had
22   actually been attacked from behind. Id at 649.[3]

23   ///

24

25       [3]Ultimately, however, the Ninth Circuit was left with 'grave doubt' as to whether
26   a jury would have found, beyond a reasonable doubt and based solely on the
     circumstance of being attacked from behind, that Daria was a "particularly vulnerable"
27   victim of domestic violence. Id at 650.  Specifically, the Court acknowledged the lack
     of evidence at trial that the victim was somehow less able than others to ward off
28   attacks. Id at 650.  In fact, the jury had heard evidence that the victim was a "generally
     a physically capable individual...." Id at 650.

1    In the instant case, the Report found the Sixth Amendment violation to be
2  harmless because the Magistrate Judge was "not in 'grave doubt' as to whether this error
3  had a substantial and injurious effect on Petitioner's sentence." (Doc. No. 12 at 14:25–
4  26.)  However, in the analysis supporting that conclusion, the Report never addressed
5  either of the aggravating factors cited by the trial court.  Instead, the Report broadly
6  concluded that if the trial court had known that <u>Cunningham</u> was going to be decided,
7  the "court **would** have relied on Petitioner's prior convictions to impose an even greater
8  sentence than the sentence imposed." (Report at 15:3–6 (emphasis added)).

9    While this belief has some support from the trial court's comments in the record,
10  it ignores that same Judge's thorough and detailed findings as to why he was striking the
11  priors. (*Lodgment* 7 Vol. 2 at 401:15–402:2).  More importantly, the Ninth Circuit
12  standard requires this Court to directly address the aggravating factors that were actually
13  used in Petitioner's sentence. <u>See</u> <u>e.g</u>. <u>Butler</u>,528 F.3d at 649.  Accordingly, the Court
14  **MODIFIES** the Report to include the following harmless error determination:

15    The second factor cited to aggravate Petitioner's sentence was the trial court's
16  determination that Petitioner had previously molested another child. (*Lodgment 7 vol. 2*
17  at 407).  This previous molestation had been reported to the police in 1990.  But instead
18  of new criminal charges, proof of the offense had been used to revoke the Petitioner's
19  parole. (*Lodgment 2* at 2–3).  Thus, it had never been proven beyond a reasonable doubt.
20  The trial court was aware of the procedural context of this previous molestation, but the
21  jury was unaware of the parole revocation and had not been asked to make any findings
22  in regard to this other victim. <u>Id</u>.

23    However, under the 'grave doubt' standard, this Court's inquiry should deal most
24  directly with what was actually presented to the jury at trial.  During the prosecution's
25  case, the jury heard the testimony of Trisha Chavez. (*Lodgment 7 vol. 2* at 260–269).  Ms.
26  Chavez testified that she was a twenty-four-year-old nursing student, a wife, and the
27  mother of two young boys. (<u>Id</u> at 260–261, 265).  She identified the Petitioner as her
28  Uncle, whom as a child she had referred to as 'Dorsey.' <u>Id</u> at 262.  Ms. Chavez explained

1   that she and her mother had gone to live with Dorsey in 1989, when she was
2   approximately nine years old. Id at 263.

3        Ms. Chavez testified that her relationship with Dorsey became much stronger once
4   they were living in the same home.  She even began referring to him as 'Dad.' Id at
5   264–265. Most significantly, Chavez testified that Dorsey had sexually molested her, on
6   two separate occasions, in late 1989. Id at 265.  She testified to the details of the
7   molestations and that she had reported the incidents to her mother on January 1, 1990.
8   Id at 267.  In turn, her mother had reported the incidents to law enforcement. Id at 267.

9        The cross-examination of Ms. Chavez was brief.  In total, it consisted of six
10  questions, taking up less than one-page in the trial-transcript, which simply established
11  that Ms. Chavez was unfamiliar with the current victim or anything to do with the
12  charges Petitioner was facing. Id at 268.  The defense never contested anything that Ms.
13  Chavez had testified to in regards to being molested by Petitioner, either on cross,
14  directly, or in closing argument. Id at 268, 352–353.  In fact, the closing argument was
15  themed roughly on the premise of 'just because something happened fifteen years ago,
16  you shouldn't assume something happened similarly in 2002.' Id at 350:4–17, 355:9–13,
17  359:10–23.

18       In sum, the Court is not left with "grave doubt" as to whether a jury would have
19  found, beyond a reasonable doubt, that Petitioner had molested Ms. Chavez.  Many of
20  the details surrounding the molestations were similar.  For example, Petitioner was
21  considered a family member to both victims and the girls were approximately the same
22  age at the time of their molestations.  The incident had also been reported near the time
23  of its occurrence to law enforcement.  And like the Ninth Circuit's observation in Butler,
24  this Court notes that the jury never heard any evidence challenging Ms. Chavez's
25  credibility or contradicting her testimony. 528 F.3d at 649.  And perhaps the most
26  persuasive factor: the jury's ultimate verdict demonstrated their belief that the Petitioner
27  was a pedophile and was capable of molesting a young girl.
28  ///

Thus, as similarly concluded in the Report, the Court finds that the trial court's use of the second aggravating factor was harmless because it did not cause a "substantial and injurious effect on [Petitioner's] sentence." Id.(citing Brecht, 507 U.S. at 637 (1993); Hoffman, 236 F.3d at 540).

Under California law, only one aggravating factor is necessary to award the upper term, and therefore, any error is "harmless if it is not prejudicial as to just one of the aggravating factors at issue." Butler, 528 F.3d at 648.  As such, this Court finds it unnecessary to discuss whether or not a jury would have found the Petitioner's actions to have been egregious and calculated. (*Lodgment 7 vol. 2* at 407).

Accordingly, the Court **MODIFIES** the Report's harmless error analysis and **DENIES** Petitioner's habeas petition with regards to his third ground for relief.

**IV.    CONCLUSION AND ORDER**

In light of the foregoing, the Court **ADOPTS-IN-PART** and **MODIFIES-IN-PART** the Report. (Doc. No. 12).  And for the reasons stated above, the Court **DENIES** Petitioner's habeas petition and orders this case dismissed. (Doc. No. 1).  The Clerk of Court shall close the district court case file.

**IT IS SO ORDERED.**

DATED:  January 14, 2009

Hon. Thomas J. Whelan
United States District Judge

-13-

07-CV-354 W (POR)